867 F.2d 1035
 Amarjit SINGH, Plaintiff-Appellant,
v.
A.D. MOYER, District Director, United States Immigration and
Naturalization Service, and United States
Department of State Information Agency,
Defendants- Appellees.
 No. 88-1129.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Jan. 10, 1989.
Decided Feb. 8, 1989.
 
 Stanley J. Horn, Horn & Wyshnytzky, Ltd., Chicago, Ill., for plaintiff-appellant.
 Anton R. Valukas, U.S. Atty., Nancy K. Needles, Chief, Civ., Chicago, Ill., James G. Hoofnagle, Asst. U.S. Atty., Carol B. Epstein, Asst. Gen. Counsel, U.S. Information Agency, Washington, D.C., for defendants-appellees.
 Before CUDAHY and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.
 PELL, Senior Circuit Judge.
 
 
 1
 Amarjit Singh ("Singh") appeals the district court's judgment dismissing his claims of "abuse of discretion" under 5 U.S.C. Sec. 706(2)(A), pursuant to 8 U.S.C. Sec. 1182(e), against the United States Information Agency ("USIA") for lack of subject matter jurisdiction, and against A.D. Moyer, District Director of Immigration and Naturalization Service ("INS") for failure to state a claim upon which relief can be granted.
 
 I. Background
 
 2
 Singh, a citizen of India, came to the United States to obtain graduate medical training. He entered the United States in June, 1979 as a nonimmigrant alien exchange visitor, by virtue of a J-1 visa.[1] Singh was required by statute[2] to return to his home country for at least two years following completion of his studies. Singh requested and received yearly extensions of his visa from June 1979 until June 1983. In October of 1981, Singh married a United States citizen. In June of 1982, Singh applied to the INS for a waiver of the two year foreign residency requirement according to 8 U.S.C. Sec. 1182(e).[3]
 
 
 3
 On August 30, 1983, Moyer denied Singh's waiver request, finding that denial of the waiver would not cause "extreme hardship" on his spouse, or that Singh would be subject to persecution;[4] Singh subsequently appealed to the INS Regional Commissioner. Before the Commissioner could address the appeal, however, Moyer concluded that "exceptional hardship" existed because he was informed that Singh's wife had a child in February, 1984. He then forwarded his revised finding to the USIA, requesting that it give a favorable recommendation to Singh's waiver application. In spite of this, the USIA recommended that Singh's waiver request be denied. Acting on behalf of the Attorney General, Moyer then denied Singh's waiver request based on the USIA's action.[5] Thereafter, Singh filed two motions, each requesting that Moyer reconsider his denial of the waiver. In both motions, Singh provided more evidence that denial of the waiver would bring "extreme hardship" on his United States citizen spouse and child, and would result in his possible persecution in his home country. INS denied both motions and did not forward the information contained in them to the USIA.
 
 
 4
 On May 19, 1987, Singh filed suit in the United States District Court for the Northern District of Illinois, claiming that the USIA and Moyer had "abused their discretion" under the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A), in denying him a waiver of the two year foreign residency requirement. In a published opinion dated November 24, 1987, the district court indicated concern over "the apparent insensitivity of the immigration bureaucracy" in refusing to issue a waiver, but the court granted the defendants' motion to dismiss. In assessing Singh's claim against the USIA, the district court found "no law to apply" to the USIA's action, and thus dismissed the claim. The court also dismissed the claim against Moyer for failure to state a claim upon which relief could be granted, finding that the INS was not required to submit Singh's Motions for Reconsideration of the denial of the waiver request to the USIA. Singh v. A.D. Moyer, 674 F.Supp. 20 (N.D.Ill.1987). Singh timely appeals the district court's judgment of dismissal.
 
 II. Analysis
 A.
 
 5
 We address for the first time in this circuit whether a federal district court has subject matter jurisdiction to review the USIA's unfavorable recommendation for a waiver of the two year foreign residency requirement imposed by 8 U.S.C. Sec. 1182(e). As noted earlier, the statute allows the granting of a waiver if: 1) the Commissioner of INS first finds "departure ... would impose exceptional hardship upon the alien's [U.S. citizen or lawfully resident alien] spouse or child, or ... return to the country of nationality ... would ... subject the alien to persecution ...."; 2) the Director of the USIA subsequently gives a favorable recommendation to the Attorney General ...; and 3) the Attorney General [or his delegate] finds the alien's "admission to the United States ... is in the public interest...." 8 U.S.C. Sec. 1182(e). Under the statute, the USIA must approve the waiver application before a waiver may be issued. Silverman v. Rogers, 437 F.2d 102 (1st Cir.1970), cert. denied, 402 U.S. 983, 91 S.Ct. 1667, 29 L.Ed.2d 149 (1971).
 
 
 6
 Both the USIA and INS are agencies as defined in the Administrative Procedure Act. 5 U.S.C. Sec. 701(b)(1) (1982). Generally, an agency's action is subject to judicial review if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1982). However, section 701(a) of Title 5 provides an exception to this rule to the extent that it precludes judicial review of an agency's action when a statute expressly bars review, "or [when] the action is committed to agency discretion by law." Board of Trade of the City of Chicago v. Commodity Futures Trading Commission, 605 F.2d 1016 (7th Cir.1979) (citing 5 U.S.C. Sec. 701(a)(1) & (2)), cert. denied, 446 U.S. 928, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). In interpreting the latter situation, the United States Supreme Court recently held that "[r]eview [of an agency's action] is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). In determining whether a "meaningful standard" for review is available, this court considers four areas: the statutory language, the statutory structure, the legislative history, and the nature of the agency action. Board of Trade of the City of Chicago, 605 F.2d at 1016.
 
 
 7
 Singh contends that the USIA's action is subject to judicial review under an "abuse of discretion" standard. Although he concedes that Sec. 1182(e), which governs waiver requests, vests considerable discretion in the USIA, Singh relies on Chong v. Director, United States Information Agency, 821 F.2d 171 (3d Cir.1987), to argue that the USIA's own regulations provide a "meaningful standard" by which to gauge whether the agency has abused its discretion. The INS and USIA contend, on the other hand, that the statutory language, the statutory structure, the legislative history, and the nature of the USIA's actions under Sec. 1182(e) provide "no law to apply" to review the USIA's actions. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (Section 701(a) of the Administrative Procedures Act applies to bar review of agency action when there is "no law to apply").
 
 
 8
 The circuits addressing this issue are not in complete accord. In Dina v. Attorney General of the United States, 793 F.2d 473, 476 (2d Cir.1986), the Second Circuit held that Sec. 1182(e) "is entirely bereft of any guiding principles by which the USIA's action may subsequently be judged." The court also held that the USIA's regulations provide no "adequate guidance to make review for abuse of discretion possible where the USIA has in fact considered the required factors on the required record." Id. In an earlier decision, the Ninth Circuit similarly held that Sec. 1182(e) fails to provide "statutory standards or legislative intent" with which the court could review the USIA's action. Abdelhamid v. Ilchert, 774 F.2d 1447, 1450 (9th Cir.1985). The court also added that the USIA's regulation, 22 C.F.R. Sec. 514.32, "raises no legal issues for review." Id.
 
 
 9
 In Slyper v. Attorney General, 827 F.2d 821, 824 (D.C.Cir.1987), cert. denied sub. nom., --- U.S. ----, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988), the Circuit Court for the District of Columbia reviewed both Abdelhamid and Dina with approval, holding that "the narrow exception provided in the APA" applies to the USIA's waiver recommendations under 8 U.S.C. Sec. 1182(e). Several district courts have reached the same conclusion.[6]
 
 
 10
 In contrast to these decisions, the Third Circuit has held that the USIA's regulations provide sufficient guidance to review whether the USIA followed its own guidelines under an "abuse of discretion" standard. Chong, 821 F.2d at 176. Although the court noted its conclusion was "contrary to those of the two other circuits," it stressed that judicial review was extremely limited because "the regulations vest rather broad discretion" in the agency's director. Id. The court went on to conclude that the USIA did not abuse its discretion when it first reviewed "the policy, program, and foreign relations aspects of the case" and subsequently denied favorable recommendation of a waiver for Chong.
 
 
 11
 We disagree with the Third Circuit's reading of Sec. 1182(e) and 22 C.F.R. 314.32. Our review of the statute and regulation compels us to conclude that there is no "meaningful standard" with which to review the USIA's action. First, the statute itself merely provides "that upon the favorable recommendation of the Director of the United States Information Agency, pursuant to the request of ... the Commissioner of [INS] ..., the Attorney General may waive the requirement...." 8 U.S.C. Sec. 1182(e). To that extent, the statutory language is void of criteria in which to judge how the Director determines the content of his inquiry or the nature of his recommendation. No circuit has held otherwise. Cf. Slyper, 827 F.2d at 824; Chong, 821 F.2d at 175-176.
 
 
 12
 Additionally, the statutory structure requires approvals at three different levels before a waiver is granted, and provides progressively more discretion at each of these levels. See Dina, 793 F.2d at 475. Moreover, a review of the legislative history reveals that Congress's original intent was to limit the number of waivers granted under Sec. 1182(e) by giving the Attorney General the discretion to issue waivers. S.Rep. No. 1608, 84th Cong., 2d Sess. 2, reprinted in 1956 U.S.Code Cong. & Admin.News 2662, 2664. Over time, this intent to restrict the granting of waivers has become even more pronounced, especially for those persons with medical training visas, such as Singh. See Pub.L. No. 94-484, Sec. 601, 90 Stat. 2300, 2300-03, and H.R.Rep. No. 264, 97th Cong., 1st Sess. 16, reprinted in 1981 U.S.Code Cong. & Admin.News 2577, 2585.
 
 
 13
 As for the nature of the agency's action, the USIA's regulation provides for the "Director [to] review the program, policy, and foreign relations aspects of the case" in making a waiver recommendation. 22 C.F.R. Sec. 514.32. Although the court in Chong reviewed these areas under the "abuse of discretion" standard, we conclude that federal courts are without expertise in assessing these determinations; judicial review is uniquely inappropriate in these areas. In sum, we conclude that by virtue of the statutory language, the statutory structure, the legislative history, and the nature of the USIA's action under Sec. 1182(e), Congress has provided no "meaningful standard" for reviewing the USIA's action, and has "committed" the USIA's "waiver recommendation function" to that agency's discretion.[7]
 
 B.
 
 14
 Singh also argues that Moyer, in his official capacity as District Director of INS, abused his discretion because his office failed to forward Singh's Motions for Reconsideration to the USIA. Singh claims that the USIA might have weighed the "program, policy and foreign relations aspects of the case" in his favor if the INS had forwarded these motions to that agency.
 
 
 15
 This court reviews the INS' actions under an "abuse of discretion" standard. Achacoso-Sanchez v. Immigration and Naturalization Service, 779 F.2d 1260 (7th Cir.1985); Bothyo v. Moyer, 772 F.2d 353 (7th Cir.1985). But as the district court pointed out in dismissing Singh's complaint under Fed.R.Civ.P. 12(b)(6), Sec. 1182(e) does not require that Moyer forward any information to the USIA once that agency denies a waiver request. Here, the USIA had already acted. Although the regulations do provide that a summary of details of the expected hardship or persecution "will be submitted to the Waiver Review Branch ...," 22 C.F.R. 514.31(b)(2) (emphasis added), nonetheless, the decision by the USIA not to recommend a waiver "for an exchange visa medical student" like Singh is final under Sec. 1182(e). See also 22 C.F.R. 514.32. Since Moyer was unable to unilaterally approve an application for waiver without the USIA's favorable recommendation, see Silverman, supra, we conclude the district court properly granted INS's Motion to Dismiss.
 
 
 16
 Accordingly, the district court's judgment granting both defendants' motions is
 
 
 17
 AFFIRMED.
 
 CUDAHY, Circuit Judge, dissenting in part:
 
 18
 There is a statutory presumption in favor of judicial reviewability of administrative action and the exception for commitment to agency discretion is very narrow. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); Abbott Laboratories v. Gardner, 387 U.S. 136, 140-41, 87 S.Ct. 1507, 1510-12, 18 L.Ed.2d 681 (1967); Local 2855 AFGE (AFL-CIO) v. United States, 602 F.2d 574, 578 (3d Cir.1979). Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) did not alter this presumption. Chong v. Director, United States Information Agency, 821 F.2d 171, 175 n. 3 (3d Cir.1987). Of the cases in other circuits which have addressed this matter of first impression here, Chong has been most faithful to this fundamental presumption. In Chong, after a careful study of the statutory and regulatory scheme, Chief Judge Gibbons found that the applicable USIA regulations, 22 C.F.R. Sec. 514.31(b)(2) and Sec. 514.32 (1986), furnish an adequate basis for judicial review--albeit a very limited review recognizing "broad discretion in the Director of the USIA." Chong, 821 F.2d at 176.
 
 
 19
 Applying that standard of review to the USIA's determination which is before us, the record shows that the USIA was in compliance with its own regulations as evidenced by its statement that "the program and policy considerations of the Exchange-visitor Program outweigh the hardship claimed for the American citizen spouse." R. at 57 (Request for State Department Recommendation, Section 212(e) Waiver). Indeed, the district court found that the Chong standard had not been violated. Singh, 674 F.Supp. at 20. Thus, apparently there was no violation of the regulations which would preclude summary judgment. The congressional intent to administer the Exchange Visitor Program strictly, especially as applied to medical doctors, is clear. See the extensive discussion of congressional intent in Chong, 821 F.2d at 176-79. Hence, I do not believe the plaintiff can prevail--even under the Chong analysis. The preservation of that analysis does seem important, to me, however, in an area where wholly capricious administrative action might otherwise govern the fate of large numbers of young specialists and doctors. I therefore believe that the agency order should be affirmed and respectfully dissent to the extent indicated.
 
 
 
 [1]
 See 8 U.S.C. Sec. 1101(a)(15)(J) (provides for different categories of exchange visitor visas)
 
 
 [2]
 8 U.S.C. Sec. 1182(e) (1988 Supp.) provides in part:
 No person admitted under section 1101(a)(15)(j) ... (iii) who ... came to the United States ... to receive graduate medical education or training, shall be eligible to apply for an immigrant visa, or for permanent residence, or for a nonimmigrant visa ... until it has been established that such person has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States.
 
 
 [3]
 On April 26, 1983, Singh filed a duplicate waiver application since INS misplaced the original application. Singh sought a waiver due to hardship on his expectant wife, and persecution in his native country because he is a member of the Sikh religion
 
 
 [4]
 The waiver procedure established in Sec. 1182(e) requires that the INS first find either "extreme hardship" to the alien's United States spouse or child would result from a denial of the waiver, or that the alien would be subject to persecution. If either is found, the INS then submits a request for approval of the waiver to the USIA. If the USIA approves the waiver application, then the Attorney General (or his designate, see infra note 5) must determine that the waiver is "in the public interest" before the waiver can be issued. 8 U.S.C. Sec. 1182(e)
 
 
 [5]
 The INS District Director is authorized to grant or deny waiver requests based upon the Attorney General's delegation of that authority according to 8 C.F.R. Secs. 100.6 & 103.1(n)
 
 
 [6]
 See Taube v. Attorney General, No. 85-CV-613 (N.D.N.Y. May 20, 1987); Ait-Kaci v. USIA, No. 86-0583 (D.D.C. July 11, 1986) [1986 WL 15690] appeal docketed, No. 86-5610 (D.C.Cir. Sept. 29, 1986); Baquero v. Attorney General, No. 86-0692 (D.D.C. Mar. 27, 1986), appeal docketed, No. 86-5335 (D.C.Cir. June 2, 1986); El-Omrani v. Director, USIA, 638 F.Supp. 430 (W.D.Pa.1986); Nwankpa v. Kissinger, 376 F.Supp. 122 (M.D.Ala.1974), aff'd mem., 506 F.2d 1054 (5th Cir.1975)
 
 
 [7]
 In light of our conclusion, we do not reach Singh's argument that the USIA abused its discretion in not making its decision on all the information Singh submitted to INS. We only note that the "required record" referred to in Dina, supra, at 476, did not involve motions for reconsideration